IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.  2:19-cr-441 |
| | ) | |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| AMIR GOLESTAN, | ) | 28 U.S.C. § 2461(c) |
| MICFO, LLC | ) | |

**INDICTMENT**

**COUNTS 1-20**
**Wire Fraud**

THE GRAND JURY CHARGES:

**BACKGROUND**

1.    At all times relevant to this Indictment:

a.    An Internet Protocol (IP) address is a numerical label assigned to each device connected to a computer network that uses the Internet Protocol, or the Internet, for communication.   IP addresses serve two basic functions – host or network identification, and location addressing.

b.    The American Registry for Internet Numbers (ARIN) is a nonprofit organization that administers IP addresses.  ARIN is a Regional Internet Registry (RIR) and component of the Internet Assigned Numbers Authority (IANA).  The IANA delegates Internet resources to RIRs, who in turn follow regional policies to delegate resources to their customers.  These customers include, but are not limited to internet service providers and end-user organizations who utilize IP addresses in their businesses or enterprises.  ARIN is one of five RIRs, and is the RIR for the United

1

States, Canada and many Caribbean and North Atlantic islands. Part of ARIN's responsibilities includes allocating IP resources, specifically the allocation and assignment of IPv4 and IPv6 addresses. ARIN, and its other regional counterparts, are critical to maintaining records and ultimately determining who is responsible for a given IP address. They are also critical to maintaining the Internet, and ensuring that an IP address is not used by multiple networks, a conflict that would result in either no Internet service, or unreliable Internet service.

    c.     IP uniqueness was first established by the U.S. government. Prior to 1997, the National Science Foundation (NSF) was responsible for IP number allocation and registration. In 1997, the Government approved the transfer of its duties and responsibilities from NSF to ARIN. Thus, ARIN inherited all the duties and responsibilities concerning the allocation and registration of IP addresses formerly performed by the U.S. government.

    d.     ARIN has specific processes and policies that must be followed and met before an IP address can be assigned or transferred. These policies are developed by the internet community ARIN serves. In order for an organization to request registration rights to internet number resources, it must submit a request to ARIN, provide documentation showing need for the requested resources in accordance with ARIN policies, and enter into a registration services agreement (RSA) with ARIN. ARIN currently has more than 23,000 RSAs with organizations on file, such as Internet service providers, wireless phone companies, universities, government agencies,

financial institutions, insurance companies, and smaller companies that require access to the internet.

e.    Internet "traffic" is routed through Internet Protocols. The Protocols utilize an address, familiar to most Internet users as a series of decimal numbers separated by periods. The Internet Protocol has gone through several versions, most recently versions four (IPv4) and six (IPv6). IPv4 was depleted at a rate not initially anticipated in the original design of the address system. As a result, a long-term solution was created in the form of IPv6, which provides a vastly increased address space. However, communication between the two systems is not universal, and IPv6 alone does not provide and immediate solution to IPv4 exhaustion. Likewise, migration to IPv6 will take considerable time. As a result, there remains a demand for IPv4 addresses, despite the solution IPv6 constitutes to IPv4 address exhaustion.

f.    In early 2011, the IANA global IPv4 pool was exhausted, though ARIN still had its own free pool of IPv4 addresses available to issue. Given the demand for IPv4 addresses, ARIN often required justification and customer identification for additional IPv4 address blocks, in an effort to verify that the IPv4 request was valid. Further, IPv4 addresses are transferrable between entities, and these transfers must also be approved by ARIN.

g.    As a result of the demand for IPv4 addresses, and the ability to transfer the addresses between entities, a secondary market was created for the transfer of address blocks. Currently, market rates for an IPv4 address are between $13 and $19.

3

h.    MICFO, LLC (MICFO) and Channel Partners were businesses owned and operated by AMIR GOLESTAN (GOLESTAN).

i.    MICFO represents itself as providing hosting services, and providing customers with the technologies and services needed for a website or webpage to be viewed on the Internet.  MICFO further represents itself as a business that requires IP addresses that it provides to its customers.

j.    From between February 2014 and the time of this indictment, AMIR GOLESTAN and MICFO created and utilized Channel Partners, which purported to consist of several individual businesses, all of whom purportedly required IP addresses from ARIN.  These entities would apply directly to ARIN for the IP addresses, completing any necessary paperwork, including identifying officers with the businesses and corresponding through business employees with ARIN in the process of requesting and obtaining IP addresses.

### THE SCHEME TO DEFRAUD

2.    From in or around February 2014 and continuing until the time of this Indictment, in the District of South Carolina, and elsewhere, the defendants, AMIR GOLESTAN and MICFO, LLC,  knowingly did devise and intend to devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses, representations, and promises, by misrepresenting to ARIN that certain companies were run by particular individuals, and that those individuals existed, when in fact those individuals were aliases for GOLESTAN and did not, in fact, exist.

4

3.     It was part of the scheme that GOLESTAN used Channel Partner component companies to apply to ARIN for IP addresses.  When applying to ARIN for IP addresses, the particular businesses would represent particular aspects about the company, for instance who the officers were, information regarding Secretary of State registration, and sworn affidavits representing facts about the business.     The information GOLESTAN provided regarding Channel Partners was not accurate however.  In fact, the individuals purported to be officers for Channel Partners were fabricated by GOLESTAN and were in fact aliases for GOLESTAN himself, or others working for him or MICFO.

4.     It was part of the scheme that GOLESTAN would create web pages and email addresses for these fictitious individuals in an effort to make it appear that these individuals ran the particular companies.

5.     It was part of the scheme that GOLESTAN provided, or caused to be provided, false statements and documents to ARIN, using the identities of these fictitious individuals, and obtained IP addresses as a result of these fraudulent representations.

6.     It was part of the scheme that GOLESTAN created and used the following companies, or "Channel Partners," and corresponding false identities, among others:

|     | Company | Fabricated Individual |
|-----|---------|----------------------|
| a.  | Contina | John Lieberman |
| b.  | Virtuzo | Jeff Farber / Mark Schmidt |
| c.  | Oppobox | Kevin Chang |

| | | |
|---|---|---|
| d. | Telentia | Yong Wook-Kwon |
| e. | Univera Network / HostAware | Steve Cunningham |
| f. | Roya Hosting | Brian Sherman |
| g. | Host Bang | Ahmad Al Bandi |
| h. | Hyper VPN | Sebastian Buszewski |
| i. | Fiber Galaxy | Pooya Torabi |
| j. | Cloudiac | Paul Lampert |

7.     Through this scheme to defraud GOLESTAN obtained approximately 757,760 IPv4 addresses from ARIN. The market value of these IP addresses is between $9,850,880.00 and $14,397,440.00.

8.     In 2017 and 2018 GOLESTAN sold, and attempted to sell, IP addresses he had fraudulently obtained the rights to. Using a third party broker, GOLESTAN sold 65,536 IPv4 addresses for $13.00 each, for a total of $851,896.00. GOLESTAN also organized a second transaction for another 65,536 IP addresses, for another approximately $1,000,000.00. During this same time period, GOLESTAN had a contract to sell 327,680 IP addresses at $19.00 per address, for a total of $6,225,910.00, with half of these addresses consisting of Channel Partner addresses obtained fraudulently. However, ARIN became aware of GOLESTAN's fraud at that time and was able to prevent the transaction from going through.

9.     On or about the dates set forth below, in the District of South Carolina and elsewhere, AMIR GOLESTAN and MICFO, for the purpose of executing the

above-described scheme and artifice, and attempting to do so, did transmit and cause

to be transmitted by means of wire communication in interstate and foreign commerce,

the writings, signs and signals, as further described below, on or about the dates

specified:

| Count | On or about | Description of Wire Transaction or Communication |
|---|---|---|
| 1. | September 19, 2014 | Oppobox Officer Attestation signed by "Kevin Chang" |
| 2. | May 14, 2015 | Allocation to Oppobox of rights to approximately 16,000 IP addresses |
| 3. | April 13, 2018 | HostAware Officer Attestation signed by "Steven Cunningham" |
| 4. | June 24, 2015 | Allocation to Univera / HostAware of rights to approximately 16,000 IP addresses |
| 5. | June 30, 2014 | RoyaHosting Officer Attestation signed by "Brian Sherman" |
| 6. | June 18, 2015 | Allocation to RoyaHosting of rights to approximately 32,000 IP addresses |
| 7. | July 29, 2016 | Virtuzo Officer Attestation signed by "Mark Schmidt" |
| 8. | June 24, 2015 | Allocation to Virtuzo of rights to approximately 16,000 IP addresses |
| 9. | July 14, 2017 | Contina Officer Attestation signed by "Jonathan Lieberman" |
| 10. | December 19, 2016 | Allocation to Contina of rights to approximately 64,000 IP addresses |
| 11. | May 26, 2015 | Fiber Galaxy Officer Attestation signed by "Pooya Torabi" |
| 12. | February 21, 2017 | Allocation to Fiber Galaxy of rights to approximately 8,000 IP addresses |
| 13. | June 5, 2015 | Telentia Data Certification signed by "Yong Wook-Kwon" |
| 14. | June 12, 2015 | Allocation to Telentia of approximately 16,000 IP addresses |
| 15. | December 29, 2014 | Border Technology / Cloudiac Officer Attestation signed by "Paul Lampert" |
| 16. | May 11, 2015 | Allocation to Cloudiac of approximately 8,000 IP addresses |

| 17. | June 21, 2015 | Fairway Network / HyperVPN Officer Attestation signed by "Sebastian Buszewski" |
| 18. | February 21, 2017 | Allocation to Fairway Network / HyperVPN of approximately 8,000 IP addresses |
| 19. | May 31, 2015 | Queen Systems / Hostbang Officer Attestation signed by "Ahmad Al Bandi" |
| 20. | June 22, 2015 | Allocation to Hostbang of approximately 256 IP addresses |

In violation of Title 18, United States Code, Section 1343.

# FORFEITURE

A.    WIRE FRAUD:

Upon conviction of Title 18, United States Code, Section 1343 as charged in this

Indictment, the Defendants, **AMIR GOLESTAN** and **MICFO, LLC** shall forfeit to the

United States, any property, real or personal, constituting, derived from or traceable to

proceeds the Defendant obtained directly or indirectly as a result of such offenses and any

property.

B.    PROPERTY:

The property subject to forfeiture includes, but is not limited to, the following:

1.    Forfeiture Judgment:

A sum of money equal to all proceeds the Defendants obtained directly or
indirectly as a result of the offenses charged in this Indictment, in an amount to be
determined equal to all proceeds derived from the offense, and all interest and
proceeds traceable thereto as the result of the violations of 18 U.S.C. §1343.

2.    IP Number Resources:

| IP Block | Entity | Number of IP addresses |
|----------|--------|------------------------|
| 104.166.96.0/19 | OppoBox | 8,192 |
| 104.247.96.0/19 | OppoBox | 8,192 |
| 104.250.224.0/19 | OppoBox | 8,192 |
| 172.98.0.0/18 | Telentia | 16,384 |
| 174.136.192.0/18 | Telentia | 16,384 |
| 45.41.0.0/18 | OppoBox | 16,384 |
| 45.41.192.0/18 | OppoBox | 16,384 |
| 45.59.128.0/18 | OppoBox | 16,384 |
| 104.167.192.0/18 | OppoBox | 16,384 |
| 104.224.0.0/18 | OppoBox | 16,384 |
| 104.249.128.0/18 | OppoBox | 16,384 |
| 155.254.192.0/18 | OppoBox | 16,384 |
| 172.110.128.0/18 | OppoBox | 16,384 |
| 172.111.0.0/18 | OppoBox | 16,384 |
| 169.197.128.0/18 | Border Technology | 16,384 |
| 172.81.0.0/18 | Border Technology | 16,384 |

| | | |
|---|---|---|
| 107.181.64.0/20 | Contina | 4,096 |
| 167.160.96.0/19 | Contina | 8,192 |
| 209.161.96.0/20 | Telentia | 4,096 |
| 104.128.16.0/20 | Telentia | 4,096 |
| 104.143.192.0/19 | Telentia | 8,192 |
| 104.222.192.0/19 | Telentia | 8,192 |
| 104.247.0.0/19 | Telentia | 8,192 |
| 107.190.160.0/20 | OppoBox | 4,096 |
| 107.182.112.0/20 | OppoBox | 4,096 |
| 104.207.64.0/19 | OppoBox | 8,192 |
| 155.254.96.0/19 | OppoBox | 8,192 |
| 167.88.96.0/20 | Virtuzo | 4,096 |
| 104.128.128.0/20 | Virtuzo | 4,096 |
| 104.156.192.0/19 | Virtuzo | 8,192 |
| 104.222.128.0/19 | Virtuzo | 8,192 |
| 104.143.16.0/20 | Roya | 4,096 |
| 104.237.80.0/20 | Univera Network | 4,096 |
| 45.62.32.0/19 | Univera Network | 8,192 |
| 45.61.32.0/20 | Border Technology | 4,096 |
| 173.44.0.0/19 | Border Technology | 8,192 |
| 172.97.80.0/20 | Fiber Galaxy | 4,096 |
| 206.223.224.0/19 | Fiber Galaxy | 8,192 |
| 172.102.128.0/20 | Queen Systems | 4,096 |
| 209.209.224.0/19 | Queen Systems | 8,192 |
| 172.110.208.0/20 | Fairway Network | 4,096 |
| 207.189.0.0/19 | Fairway Network | 8,192 |

## C.    SUBSTITUTION OF ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third person;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be subdivided without difficulty;

10

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 U.S.C. § 982(b)(1) to seek forfeiture of any other property of Defendant up to an amount equivalent to the value of the above-described forfeitable property;

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A ___Trµe___ BILL

SHERRI A. LYDON (NSW)
UNITED STATES ATTORNEY