IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                     )<br>                        Plaintiff,   )<br>                                                     )<br>vs.                                                )<br>                                                     )<br>AMIR GOLESTAN and MICFO, LLC,   )<br>                                                     )<br>                        Defendants.   )<br>                                                     )<br>_____ )  | Criminal No. 2:19-cr-00441-RMG<br>Misc. No. 2:21-mc-00699-RMG<br><br>**MEMORANDUM OF LAW REGARDING APPLICATION OF SECTION 2B1.1(b)(1)** |

Section 2B1.1 of the United States Sentencing Guidelines sets forth the basic offense level for most economic crimes, including the fraud at issue in this case, as well as specific offense characteristics that can enhance those crimes. A central issue in this case that stymied efforts to negotiate a resolution of the matter pretrial is the wide delta between the Defendant's view of the application of the specific offense characteristic for loss versus that of the Government. During negotiations, the Government made clear it would seek to radically enhance Defendant's sentence on the theory that he intended to (or could have) gained many millions of dollars from the sale of the fraudulently obtained IP number resource rights, while Defendants argued there was no actual or intended loss to the victim in the case, ARIN, regardless of the actual or speculative *gain* Defendants may have obtained.

**Background**

Notwithstanding the complexity of the efforts made by Amir Golestan and Micfo to conceal the relationships between the two and the many "Channel Partner" entities that were, in

1

fact, Micfo entities operating under aliases, the fraudulent acts themselves were quite simple:[1] Defendants sought to obtain and did obtain IP number resource rights from the American Registry for Internet Numbers ("ARIN") using fictitious entities operating through aliases of Amir Golestan. ARIN testified at trial and Defendants conceded during their plea that ARIN would not have provided access to these entities had they known the true identities of the entities requesting them. ARIN testified at trial, through its Chief Customer Officer John Sweeting, that as the steward for the IP number resources in North America, it does not monetize the resources themselves but charges membership fees associated with the volume of number resources assigned to an entity. That is, ARIN does not collect any more or any less in membership fees depending on the market value of the IP number resources or the entity requesting them. Despite ARIN's efforts at distributing the numbers equitably within the internet community, IPv4 number resource exhaustion led to a secondary market for these resources.[2] ARIN's involvement in these secondary transfers involves only approving the transactions based on its internal IP number allocation policies and charging a transfer fee that is unconnected to the market value of the transfer. That is, whether a block of IPs is transferred from one entity to another for $100 or $1,000,000, ARIN's involvement is the same and ARIN's fees associated with the transfer are the same. ARIN further testified at trial that had the fraud not occurred the resources would have been allocated according to the same cost structure to other entities making similar requests on a first-come, first-served basis, so long as the other entities could demonstrate need for the resources according to ARIN's policies.

---

[1] Defendants have readily conceded that the complexity of the actions taken to conceal from ARIN the true identity of the owners of the Micfo entities justifies an enhancement under § 2B1.1(b)(10) for the use of "sophisticated means" to conduct the fraud.

[2] This was testified to at trial by Jack Hazan, Mike Burns, Hillary Stiff, and Sandra Brown, all of whom have brokered these resource allocation transfers on behalf of numerous entities, including Defendants.

At the end of 2018, after discovering Defendants' use of the alias entities to obtain these resources, ARIN provided notice to Defendants of their intent to revoke the resource rights and subsequently made the criminal referral to the FBI that led to this prosecution. At the same time, Defendants first sued for injunctive relief and then arbitrated their claims to maintain the resources. As part of the May 2019 settlement of that matter, ARIN testified that Defendants were permitted to maintain a total number of IP resources equal to those deemed by ARIN not to have been fraudulently obtained, and Defendants agreed to pay $350,000 for ARIN's legal fees. From that time, Micfo was permitted to continue using the remaining assigned number resources and obligated to pay the concomitant annual membership fees. [3]

## Section 2B1.1(b)(1) – Loss Amount

On its face, Section 2B1.1(b)(1) is simple – if the party victimized by the fraud experiences an economic or pecuniary loss because of the fraud, the sentencing guideline range will be increased. In this way, the guidelines use the economic damage occasioned by a fraud as a proxy for the seriousness of the offense. The simplicity of the text of 2B1.1(b)(1) is deceiving, as reflected in the voluminous application notes to the subsection and thousands of reported cases attempting to interpret and apply it to individual cases. But the concept remains simple. Because some frauds are interdicted before they can actually cause loss, and some other losses are especially complex to calculate, the Sentencing Commission developed the concept of "intended loss" to stand in for actual loss in those case. Loss and intended loss both reflect a *mens rea* component—

---

[3] On November 23, 2021, following the guilty plea in this matter, ARIN notified Defendants in writing of the termination of the Registration Services Agreement in effect between Micfo and ARIN and immediately revoked Defendants' remaining IP number resources.

3

that is, whether losses are actual or intended, they enhance a sentence because they reflect a defendant's *intent* to cause harm to the victimized person or entity.[4]

The Government bears the burden of proving the loss amount. *U.S. v. Dawkins*, 202 F.3d 711, 714 (4th Cir. 2000). Here, there is no actual loss occasioned by the Defendants' conduct. As was testified to at trial, had Defendants not received *and paid for* access to the IP number resources at issue in this case, some other entity would have been given that access according to the same fee structure. The income to ARIN would have been the same in any event. There was no economic harm to the entity.[5] Neither was Defendants' conduct *intended* to cause any harm to the entity. The specific offense characteristic for loss is not applicable in every fraud case. It is not applicable here. Loss is not a broad or abstract concept. It is "the pecuniary harm suffered by or intended to be suffered by victims." *United States v. Free*, 839 F.3d 308, 323 (3d Cir. 2016). There was no such pecuniary harm here, either actual or intended.

There was, however, undeniably, gain to Defendants. First, Defendants benefitted for many years from the use of the IP number resources necessary to service their clients and build their cloud computing architecture. Then, on several occasions, after determining that some of the assigned number resources were no longer necessary to their business, Defendants benefitted by transferring their rights to those resources on the secondary market to buyers who paid a premium for those rights. But where, as here, there has been no loss to the victim of the fraud, the binding

---

[4] Judge Joel Slomsky provides a detailed and illuminating discussion of the interplay between actual and intended loss, whether "intended gain" can ever be a proxy for loss, and the *mens rea* requirement of the loss amount enhancement in *United States v. Yu Xue*, Criminal Action No. 16-22, at *33-34 (E.D. Pa. Sep. 22, 2020)("The Guideline definition of intended loss includes the mens rea requirement that the defendant 'purposely sought to inflict' pecuniary harm on the victim. Therefore, to establish a prima facie case of intended loss, the Government must show that a defendant had the requisite subjective intent. In other words, the Government must establish that a defendant "purposely sought to inflict" a specific monetary amount of loss on the victim.")

[5] Defendant concedes that ARIN incurred legal fees and other costs associated with its cooperation with the Government in this matter. Application Note 3(D)(ii) to Section 2B1.1 of the Guidelines specifically excludes such costs from the loss calculation.

4

application notes to the Guidelines are clear: "The court shall use the gain that resulted from the offense as an alternative measure of loss *only if there is a loss* but it reasonably cannot be determined." U.S.S.G. § 2B1.1, app. n. 3(B) (emphasis added).

Once the technical complexities of IP number resource allocation are dispensed with, the fraud in this case is simple. Defendants were customers of ARIN. ARIN no longer wanted to do business with Defendants, so Defendants used aliases in order to induce ARIN to continue doing business with them. This is akin to a customer banned from eating in a restaurant returning to the establishment wearing a disguise in order to continue being served. The customer pays the same price for the meal as any other customer but has defrauded the business into serving him a thing of value, the meal, when it otherwise would not have. So long as the bill is paid, there is no *loss* to the business in that case, though there may be undeniable and justified consternation by the business for having been deceived. There is no more loss to ARIN in this case than to the duped restaurateur.

## Conclusion

Because there was no loss to ARIN, intended or actual, the specific offense characteristic in Section 2B1.1(b)(1) is inapplicable to this case.

[signature page to follow]

5

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/ E. BART DANIEL*
    E. Bart Daniel
    Federal Bar No. 403
    E-Mail: bart.daniel@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

*and*

    Cameron J. Blazer
    BLAZER LAW FIRM
    Federal Bar No. 10131
    E-Mail: cameron@blazerlaw.com
    1037 Chuck Dawley Blvd., D100
    Mt. Pleasant, SC 29464
    (843) 732-4441

    *Counsel for Defendants Amir Golestan and Micfo, LLC*

Charleston, South Carolina

December 3, 2021