IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                    )<br>                           Plaintiff,   )<br>                                                    )<br>vs.                                              )<br>                                                    )<br>AMIR GOLESTAN and MICFO, LLC,   )<br>                                                    )<br>                           Defendants.   )<br>                                                    )<br>_____)   | Criminal No. 2:19-cr-00441-RMG<br>Misc. No. 2:21-mc-00699-RMG<br><br>**SUPPLEMENTAL<br>MEMORANDUM OF LAW** |

After receiving initial briefing regarding the application of the actual and intended loss provisions of Section 2B1.1 of the Federal Sentencing Guidelines, the District Court directed the parties to address whether the fraud in this case involved victims, as that term is defined by the Guidelines, other than the American Registry for Internet Numbers (ARIN), citing the guidance provided by *United States v. Qazah*, 810 F. 3d 879, 889-890 (4th Cir. 2015). The Court raises a valid question which, upon careful review of the cited case and the particulars of this case, results in the conclusion urged in Defendants' first memorandum on the subject: ARIN was the only victim of the fraud as that term is defined in the guidelines, and ARIN did not suffer an actual loss.

**A.  ARIN is the only identifiable victim.**

In *Qazah*, the defendants had engaged in a conspiracy to purchase hundreds of thousands of stolen cigarettes from undercover law enforcement agents and redistribute those stolen cigarettes to convenience store operators throughout North and South Carolina, presumably at a considerable discount compared to their cost if purchased lawfully at wholesale and properly

1

subject to state excise taxes.[1] After his conviction at trial, Qazah raised several issues on appeal, including whether the District Court had erred in its calculation of the loss amount. Because the cigarettes had not actually been stolen from Phillip Morris, the District Court had to conduct an inquiry into the intended loss that would have been suffered by the intended victim. The District Court determined that the retail value of the cigarettes was the proper measure of the intended loss.

On appeal, the Fourth Circuit determined that if Phillip Morris was the only victim of the offense, the wholesale rather than retail value would be the appropriate measure of loss. But, the *Qazah* court continued, the District Court should have engaged in a more robust inquiry into whether Philip Morris was the *only* victim of the offense, noting that other victims could *conceivably* exist for whom the retail value of the cigarettes might have been an appropriate measure—including the retailers who were forced to compete with other retailers who had purchased the stolen cigarettes. The Fourth Circuit remanded for the District Court to conduct such an inquiry. A review of the District Court record on remand reflects that the Government stipulated to the use of the wholesale value rather than further litigating that issue; there were not, according to the resentencing transcript, any further victims formally identified by the Government. *United States v. Qazah*, 3:11-cr-00373-FDW-DSC, Dkt. No. 624, (W.D.N.C.); Exhibit A – Qazah Transcript.

Here, the Government has taken the Court's invitation to identify victims other than ARIN in such a way as to merely speculate that other applicants for number resources were intentionally and pecuniarily harmed by Defendants' conduct. At worst, based on testimony from ARIN's representative at trial, Defendants' fellow customers of ARIN waited longer to obtain number

---

[1] The cigarettes had not actually been stolen, but because agents represented to the defendants that they had been stolen from cigarette manufacturer Phillip Morris, that satisfied the element of the offense relating to buying and selling of stolen goods.

2

resources than they might otherwise have, based on their position in line behind Defendants. Further, there is no evidence whatsoever that Defendants' conduct was motivated by any intent to harm *any* entity, not least any fellow applicant. There was no intent to cause pecuniary harm, and there was no pecuniary harm to other applicants occasioned by Defendants' conduct.

Next, the Government argues that third parties who purchased number allocations from or had contracts to purchase number allocations from Defendants were victims of the fraud and commends the Court to assess the value of the contracts as the measure of intended loss. But this approach is flawed in several ways. First, there was no actual loss to the parties who purchased these allocations because, as John Sweeting testified at trial, their purchases were thoroughly vetted and approved by ARIN, per its policies. The Government claims that the only reason there was no loss was that ARIN did not revoke the IP numbers transferred by Defendants and the Government did not seek their forfeiture.[2] But that is a red herring. By approving the transfers, ARIN allowed assignment of these blocks to transferees in other RIR regions, to purchasers who were bona fide *by ARIN's own approval processes* to have demonstrated need for the IP blocks. So, because there would be no rightful mechanism for ARIN to revoke or the government to seize these assets from the transferees, there was neither any actual nor any intended loss occasioned by these transfers.

### B. ARIN could not ever have sold the IPv4 assets.

As ARIN's expert testified at length, ARIN is a non-profit trustee of most of the internet number resources in North America. ARIN is one of five Regional Internet Registries formed by the stakeholders in the internet community to manage the internet number resources the Internet

---

[2] Sweeting did testify that ARIN did not revoke ]IP number blocks still in use by Defendants at the time of settlement with them, in order to protect Defendants' many legitimate clients, and despite ARIN's power to do so. Sweeting did *not* testify that ARIN would or could have revoked the IP number resource blocks *transferred* to other internet service entities.

3

depends on to function. ARIN does not "own" the IP number resources it manages. Instead, it acts as a steward in this region for those resources. The Government's refrain that ARIN *could* have sold the IP number resources at issue in this case for tens of millions of dollars is simply not true. Dkt. No. 155 at 8-9.[3] ARIN has a right to determine whom it will serve as a customer, but it neither gains nor loses depending on who is served as a customer, and ARIN would have no right whatsoever to sell open IPv4 blocks on the open market, so using that calculation to project loss when none exists would be improper and unfair.

### C. Conclusion

For all these reasons, in addition to those reasons set forth in Defendants' first memorandum of law, it is inappropriate to assess a special offense enhancement relating to loss in this case.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ E. BART DANIEL
    E. Bart Daniel
    Federal Bar No. 403
    E-Mail: bart.daniel@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

*and*

---

[3] Indeed, a review of ARIN's IRS form 990 for the years of 2018 and 2019, during the height of its internal investigation of defendants reflects assets totaling less than $30,000,000. That figure alone makes clear that the hundreds of millions of IP resources under its management are not counted among the entity's assets. Moreover, on both forms, in answer to the question, "Did the organization become aware during the year of a significant diversion of the organization's assets?" the organization answered "No" for both tax years, despite the fact that the Defendants' conduct was the subject of an intense investigation during those years, leading to the referral of the matter to the FBI. Exhibit B – IRS forms at pp. 6, 36.

        Cameron J. Blazer
        BLAZER LAW FIRM
        Federal Bar No. 10131
        E-Mail: cameron@blazerlaw.com
        1037 Chuck Dawley Blvd., D100
        Mt. Pleasant, SC 29464
        (843) 732-4441

        *Counsel for Defendants Amir Golestan and Micfo, LLC*

Charleston, South Carolina

December 22, 2021