IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 2:19-cr-00441-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS' SUPPLEMENTAL** |
| vs. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| AMIR GOLESTAN AND MICFO, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

In responding to the Revised PSR Paragraphs 33-39, Mr. Golestan would show as follows:

## Legal Framework

### A.  Statutory Limitations on Liability

Section 230 of the Communications Act protects providers or users of interactive computer services that act only as intermediaries for third-party content.  47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provide.")  It "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

As the Fourth Circuit explained in *Zeran*:

Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum. In specific statutory findings, Congress recognized the Internet and interactive computer services as offering "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." *Id.* § 230(a)(3). It also found that the Internet and interactive computer services "have flourished, to the benefit of all Americans, *with a minimum of government regulation*." Id. § 230(a)(4) (emphasis added). Congress further stated that it is "the

policy of the United States ... to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, *unfettered by Federal or State regulation.*" Id. § 230(b)(2) (emphasis added).

*Zeran*, 129 F.3d at 330; *see also In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, No. 5:21-CV-02777-EJD, 2022 WL 4009918, at *5 (N.D. Cal. Sept. 2, 2022) (describing the purpose of 230 as "protecting freedom of speech on the Internet, removing disincentives to voluntary private censorship, and encouraging the development of Internet commerce generally").

**Digital Millennium Copyright Act (DMCA) – 17 U.S.C. § 512**

As part of DMCA, Congress created a safe harbor that limits the liability of an online service provider such as Micfo for copyright infringement when service providers' involvement is limited to "transmitting, rooting, or providing connections for, material through a system or network controlled or operated by or for the service provider." More specifically, 17 U.S.C. § 512 provides limitations on liability relating to material online – Safe Harbors for Internet Service Providers:

(a) Transitory Digital Network Communications.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—

(1) the transmission of the material was initiated by or at the direction of a person other than the  service provider;

(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;

(3) the service provider does not select the recipients of the material except as an automatic response to the request of another person;

(4) no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5) the material is transmitted through the system or network without modification of its content.

**B.  Sentencing Guidelines' Limitations on Liability**

The United States Sentencing Guidelines' ("USSG") limit "Relevant Conduct"—the factors that determine the Guideline Range—to:

(a) (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

(i) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense

(a) (2)  Solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and

(1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

USSG § 1B1.3

**Micfo Provided Legitimate Services to Legitimate Customers**

As was testified by multiple government witnesses, Melyssa Banda and Matt Talarico, Micfo provided legitimate services to enterprise customers, some among Fortune 500 companies, and should not be held liable for the actions taken by certain end-users (customers of Micfo's subscribers) who allegedly have used Micfo's services in an improper way, and also in violation of Micfo's own terms and conditions as set forth in its Hosting Services Agreement.

At no point did the government allege that Micfo rendered and/or participated in any scheme to provide illegitimate services – or enabled and permitted its customers or end-users engage in illegal activities.

**Micfo's Established Policy of Terminating Infringers**

Government witness, Melyssa Banda, testified at the trial that in fact she was the one who established and created policy and Standard Operating Procedure (SOP) for handling legal matters and "takedown" notices.  Further, the government did not allege that Micfo dodged subpoenas or legal notices.  At the trial, Micfo introduced into evidence its Standard Operating Procedure (SOP) for addressing administrative subpoenas, as well as list over 200+ state and federal subpoenas Micfo had complied with.

## BACKGROUND

**ARIN Settlement Agreement**

On May 1, 2019, two weeks prior to Golestan/Micfo getting indicted, Micfo and the channel partner companies entered into a global settlement agreement with ARIN, effectively resolving and settling all their disputes pertaining to any/all matters alleged in the government's indictment, as it relates to Micfo, the channel partner companies, the use of aliases, IP addresses

and the means by which the subject IP addresses were procured.  As part of the settlement agreement Golestan/Micfo did not admit to any alleged fraud/wrongdoings – and ARIN further agreed to permit Micfo to retain over 220,000 IP addresses, including over 150,000 IP addresses that were issued to the channel partner companies.  The IP addresses Micfo was permitted to retain post-settlement includes all the IP addresses that are subject to the Colorado lawsuit that was initiated by Attorney Culpepper, irrespective to "being originally registered to a channel partner company, was at some point transferred to a channel partner company, or used a channel partner to use it as justification to get more IP addresses. *[See Exhibit A]*

**Micfo Entered into a New Registration Services Agreement with ARIN**

As part of the settlement agreement with ARIN, and in order to retain 220,000 IP addresses, per ARIN's direction Micfo executed and entered into a new Registration Services Agreement (RSA) with ARIN, paid all channel partners' annual membership fees, continued to do business with ARIN, and remained a member in good standing.  [***See Paragraph 7 of ARIN's settlement agreement – Exhibit A.]***

It continues to be our position that ARIN breached the settlement agreement *(Paragraph 10)* by terminating Micfo's membership post- Golestan/Micfo change of plea during November 2021.  Based on Paragraph 10 of the settlement agreement, ARIN had agreed to <u>not</u> take any actions against Micfo based on all facts that were known to ARIN.

**ARIN Transferred Channel Partner IP Addresses to Micfo**

Per *Paragraph 7* of ARIN's settlement agreement, ARIN agreed to transfer over 150,000 IP addresses that were issued to the channel partner companies to Micfo's organization ID with ARIN (Micfo-2).

Upon competition of the transfer of the resources from channel partners to Micfo, all subjection channel partner organizations and their corresponding organization IDs would be

permanently deleted and closed by ARIN in their database. *[See Paragraph 7 of ARIN's settlement agreement.]*

On May 23, 2019, ARIN successfully transferred the channel partner companies' resources such as their IP addresses and Autonomous System Numbers (ASN). *[See Exhibit B]*

Therefore, the IP addresses subject to the alleged copyright infringement did not belong to the channel partner companies and were not subject to any legal disputes between ARIN and Micfo or the channel partner companies.

**Inaccurate WHOIS Contact Information**

In the Colorado complaint, Attorney Culpepper alleges that the use of channel partner companies made it impossible to obtain accurate contact information pertaining to the service providers controlling the IP addresses from which the alleged copyright infringement was initiated – and that did not include any valid contact information.  This statement that has also made it to the revised PSR is false for the following reasons:

1. As demonstrated in *Exhibit C*, from January 23, 2016 to October 2019, Micfo and channel partner companies, including Roya Hosting, OppoBox, Contina, Telentia, Virtuzo, Univera Network (d/b/a Hostaware) and HyperVPN received and processed over 200 subpoenas from state and federal agencies such as U.S. Department of Justice, FBI, Tennessee Police Department, Massachusetts Office of Attorney General, Department of Homeland Security, U.S. Immigration & Customs Enforcement, Department of the Treasury, NYPD Organized Crime and Rackets, Internal Revenue Service, U.S. Attorney's Office District of Columbia, and many more.  Without an established policy and Standard Operating Procedure (SOP), as well as valid and accurate WHOIS contact information, those respected state and federal agencies would not have been able to contact Micfo and the channel partner companies, and in return we would not have been able to receive, comply with and process every single one of those subpoenas and court orders.

2. In the Colorado lawsuit, and now by extension of the Revised PSR, Attorney Culpepper alleges that "for example, until fall of 2019, IP address 104.237.80.145 was identified by public records as being controlled by Univera Network [Hostaware], however [copyright owner's] data provider did not and could not know that Univera Network and Micfo were the same company."

As demonstrated earlier, on May 23, 2019, ARIN transferred all the channel partner companies' IP addresses and ASNs, including those of Univera Network, to Micfo and subsequently deleted channel partner companies' organization IDs from its public database. Therefore, by spring of 2019 and post- May 23, 2019, all public records would have shown IP addresses previously assigned to the channel partner companies as now being managed and controlled by Micfo.

**All Alleged Copyright Infringements Occurred Post- May 23, 2019**

During the Colorado discovery, Attorney Culpepper provided Micfo's counsel an excel file containing 2,831 instances ("hits") of copyright infringement. While Attorney Culpepper did not provide 2,831 individual Notices of Infringement as required by DMCA, and by extension Micfo's Hosting Services Agreement, to substantiate his claims, for every alleged hit he provided the following information: Notice ID, IP address, filehash, filename, date notice sent, movie title, client DHTport, Client port, track name, client protocol (BitTorrent), as well as date and timestamp of the alleged instance of copyright infringement. *[See Exhibit D]*

A cursory review of the file reveals that the first alleged instance of copyright infringement took place on October 10, 2019, and the last instance ended on May 1, 2020.

This timeline is significant for the following reasons:

- It is nearly five (5) months after "date offense concluded." Golestan/Micfo were indicted on May 14, 2019. The alleged copyright infringement began on October 10, 2019.

- It is after ARIN entered into a global settlement agreement with Micfo and the channel partner companies. The settlement agreement was duly executed on May 1, 2019 and by May 23, 2019 channel partner companies' IP addresses were transferred by ARIN to Micfo. No channel partner company owned or controlled any IP addresses. The allege copyright infringement began on October 10, 2019, over five (5) months after channel partners no longer existed. Moreover, there were no legal disputes concerning IP addresses controlled by Micfo.

**Golestan Files for Bankruptcy**

On October 28, 2019, Golestan files a personal Chapter 11 bankruptcy. Subsequently on February 14, 2020, Golestan converts his bankruptcy to a case under Chapter 7. As the result of the conversion, 100% membership interest of Micfo and the channel partner companies gets assigned to Michelle Vieira, the Trustee of Golestan's bankruptcy estate. On June 20, 2020, the Trustee, as the owner of Micfo, amends and restates Micfo's operating agreement, assigning Golestan as an employee of Micfo – and in capacity of a manager he would receive $12,000/month in compensation. The Trustee further imposes limitation on authority of Golestan as the manager – and limiting his activities in relation to/with ARIN and IP addresses. ***[See Exhibit E]***

**Colorado Complaint is Filed**

On June 11, 2021, one (1) year after Golestan became merely an employee of Micfo, and two (2) years after ARIN, Micfo and channel partner companies resolved all matters concerning IP addresses and the use of channel partner companies, Attorney Culpepper filed a complaint in Colorado District Court against Micfo, and individually against Amir Golestan. ***[See Exhibit F]***

Among other facts, Plaintiff repeatedly acknowledges the following:

- It was the customers of Micfo's subscribers (the "end-users") who engaged in copyright infringement. Thus, Micfo is twice-removed from the alleged conduct.

- That the end-users uploaded and downloaded the copyright material using BitTorrent.

- That the Plaintiff's copyright material was infringed 2,800 times, and allegedly 2,800 individual Notices of Infringement such as one shown in *Exhibit D* was sent to Micfo.

- At no point were Plaintiff's copyrighted materials stored on Micfo's servers, that the works were stored on the end-users' personal devices, and infringement was facilitated using peer-2-peer (P2P) protocol such as BitTorrent.

**Golestan is Dismissed from Colorado Complaint**

On July 13, 2021, Attorney Culpepper moves before the court to voluntarily dismiss Golestan without prejudice. The same day he serves a copy of the notice via first class mail at Golestan's last known address. *[See Exhibit G]*

**The Trustee Repeatedly Refuses to Defend Micfo in Colorado**

After being served the lawsuit, Golestan in his capacity as the manager of Micfo engages Micfo's corporate counsel, Jamie Hood, to reach out to the Trustee as the 100% owner of Micfo, to defend Micfo against the lawsuit filed by Attorney Culpepper in Colorado. On July 20, 2021, Attorney Hood emails Trustee's counsel, Christine Brimm, to inform her about the lawsuit, advising them that they need to respond to the complaint. The same day Brimm responds, saying, "The Trustee won't be able to employ her professional to respond to this lawsuit on Micfo's behalf. Micfo is a separate, operating entity, which is not in bankruptcy."

On July 22, 2020, Attorney Hood responds, saying, "In reviewing the amended operating agreement of Micfo LLC, it seems that the Trustee owns 100% of Micfo. The potential entry of a judgment adverse to Micfo would have an immediate impact on the value of Micfo and the Trustee's corresponding interest." Attorney Hood continued urging the Trustee and her counsel, to no avail. *[See Exhibit H]*

**Golestan Retains Hood Law Firm to Defend Micfo**

Despite the repeated refusal of Micfo's owners to defend its interest, Golestan makes an executive decision as the manager of Micfo and retains Hood Law Firm to defend and respond to the Colorado complaint.

On September 3, 2021, the parties file a scheduling order [ECF 23] *[See Exhibit I]* attesting to the following undisputed facts:

- Through the servers leased by Micfo, Micfo provided "bare metal servers" and "cloud hosting" for its subscribers;

- Golestan is the registered agent for Micfo, and was formerly the sole member of Micfo *[see page 4 of Exhibit I]*;

- Micfo's subscribers include Virtual Private Network (VPN) service providers *[see page 5 of Exhibit I]*;

- Micfo ultimately ends accounts that either don't pay for their service and/or violate its terms and conditions;

- Micfo leases use of its servers to its subscribers so that the subscriber can host VPN networks on Micfo's servers, but the subscriber's use of the server is not limited to VPN networks, and Micfo cannot monitor the activity of the subscribers *[see page 5 of Exhibit I]*;

- The parties agree there is likelihood of a prompt settlement *[see page 7 of Exhibit I]*.

**Draft of Stipulated Consent Judgment**

On September 7, 2021, Attorney Culpepper proposes a draft of Stipulated Consent Judgment where Micfo agrees to assign its legal claims against third-party violators to the Plaintiffs. In his correspondence, Attorney Culpepper says, "…we would still have to file the action against the subscribers in the name of (assignee of Micfo) and need Micfo's cooperation. Hopefully I can get all the necessary documents to support the case beforehand. But at least this

way we can end the case in one swoop.  Of course I still need the subscribers' name…" *[See Exhibit J]*

On September 10, 2021, Attorney Hood files Micfo's Rule 26 initial disclosures.  In response to paragraph 3B, the defendant refers plaintiff to Micfo's Hosting Services Agreement and its terms and conditions on Micfo's website which were agreed to by the subscriber.  It places all liability for any violation of the terms and conditions on the subscriber, and not the defendant. *[See Exhibit K]*

On September 14, 2021, Golestan's email to Micfo's counsel identifies Nord VPN and Proton Technology as Micfo's subscribers, whose customers were the alleged violators.  These violators were customers of Micfo's subscribers and had no direct relationship with Micfo. *[See Exhibit L]*

On December 29, 2021, Golestan resigns as manager of Micfo and notifies the Trustee. *[See Exhibit M]*

**Trustee Continues to Refuse to Defend Micfo**

On December 30, 2021, Micfo's counsel requested a telephone conference with Trustee and her counsel to discuss Attorney Culpepper moving before the court to request for Micfo and Golestan to be held in contempt due to lack of response to Request for Production of Documents.

On January 4, 2022, Trustee's counsel, Christine Brimm, responds to Attorney Hood, saying, "Micfo is a manager-managed LLC and is currently without a manager.  There are already multiple judgments again Micfo, no ongoing operations, and no assets of any value.  All IP addresses, which were arguably the only asset of any value, have been revoked.  Micfo was convicted of 20 counts of wire fraud and is now defunct." *[See Exhibit N]*

On January 6, 2022, Hood Law Firm files a Motion to Be Relieved as Counsel and ceases to provide additional legal services to Micfo. *[See Exhibit O]*

**Rule to Show Cause is Entered Against Micfo**

On January 6, 2022, Judge Jackson, presiding over the Colorado case, issued a rule to show cause giving Micfo and its former manager until January 20, 2022 to respond as to why they should not be held in contempt for lack of response to plaintiff's Request for Production of Documents. *[See Exhibit P]*

On January 19, 2022, counsel for Trustee, Christine Brimm, by a letter to Judge Jackson, informs the court that "upon Golestan's bankruptcy filing, 100% interest of Micfo became property of the bankruptcy estate.  Accordingly, the Trustee hold the beneficial interest in Micfo."  Further, she informs the court that Golestan was the manager of Micfo until December 29, 2021, at which time he tendered his resignation. *[See Exhibit Q]*

On January 20, 2022, Golestan files a timely response pursuant to Judge Jackson's January 6, 2022 order, detailing why he should not be held in contempt of the Court. *[See Exhibit R]*

**Copyright Infringement Notices Must be DMCA-Compliant**

Notice of Copyright Infringement must be in writing and prepared according to the Digital Millennium Copyright Act ("DMCA") guidelines set forth in 17 U.S.C. 512 (c)(3) to be considered a valid notification.  Furthermore, the copyright owners must send individual notices for every instance ("hit") of copyright infringement and violation of their protected work.

Accordingly, a valid notification must include the following information as explained and required in Micfo's Hosting Services Agreement to be in compliance with DMCA:

1.  Your signature or the signature of a person authorized to act on your behalf;

2.  Identification of the copyrighted work that you claim to have been infringed;

3.  Identification of the material that is claimed to be infringing as well as information reasonably sufficient to permit Micfo to locate the material;

4.  Information reasonably sufficient to permit Micfo to contact you, including an address, telephone number, and, if available, an electronic mail address;

5. A statement that you have a good faith belief that the use of the material in the manner complained of is not authorized by you, your agent, or the law; and

6. A statement that, under penalty of perjury, the information in your notification is accurate and that under penalty of perjury you are authorized to act on behalf of the owner of an exclusive right that is alleged to be infringed. *[See Exhibit S]*

During the Colorado discovery, Attorney Culpepper filed a sample Notice of Infringement with court that appears to be DMCA-compliant, that other than a required phone number it contains all the necessary information to be constituted as a valid notification for one (1) hit. *[See Exhibit T]*

**Attorney Culpepper's Claim to the Government is Contradictory and Lacks Credibility**

In his July 12, 2022 letter to the government, Attorney Culpepper claims that the Plaintiffs he represented in the Colorado lawsuit were subject to 109,276 instances of copyright infringement ("hits"). This is contradictory to his original complaint filed in the District of Colorado, in which he repeatedly claimed that the Plaintiff's works were infringed over 2,800 times.

Moreover, during the discovery he provided Micfo's counsel as excel file consisting of 2,831 hits, with corresponding and required information.

Finally, his claim of 109,276 hits is hearsay and lacks any credibility as it is not DMCA-compliant. He has simply provided the government with the alleged IP addresses from which the alleged "hits" were initiated – without providing other critical information, which is required according to DMCA and Micfo's Hosting Services Agreement.

Attorney Culpepper has failed to provide 109,276 individual Notices of Infringement related to the Colorado "Plaintiffs" – which regardless stands in huge contrast with the original claim.

Additionally, Attorney Culpepper is now also claiming that the "non-plaintiff entities" were subject to 922,448 instances of copyright infringement ("hits") without providing a single

Notice of Infringement.  Attorney Culpepper has failed to provide a total of 1,031,724 notices of copyright infringement for plaintiff and non-plaintiff entities.

For the reasons stated in this objection, we continue to deny that Golestan is responsible for these alleged instances of copyright infringement.  Therefore, this entire "Relevant Conduct" should be excluded from the Court's consideration in sentencing.

### Timeline of Events

It is critical to insert the dates of alleged infringement into a timeline of events to demonstrate that Golestan is not responsible. The timeline is as follows:

| DATE | EVENT |
| --- | --- |
| May 1, 2019 | Golestan & ARIN settle their civil case.  *(Exhibit A)* |
| May 14, 2019 | Golestan is indicted. |
| May 23, 2019 | ARIN transfers certain Channel Partners IP addresses to Micfo. After this date, there are no IP addresses belonging to any channel partner. All are owned by Micfo.  *(Exhibit B)* |
| Post May 23, 2019 | All alleged violations or hits occurred after this date. No Channel Partners owned or controlled any IP addresses after this date. |
| October 29, 2019 | Golestan files Chapter 11 Bankruptcy. |
| February 14, 2020 | Golestan coverts bankruptcy to Chapter 7. Thereafter 100 percent of Micfo's interest is assigned to Trustee; |
| June 30, 2020 | Trustee amends operating agreement assigning Golestan as Manager of Micfo. *(Exhibit E)* |
| June 11, 2021 | Colorado Complaint is filed.  *(Exhibit F)* <br> Plaintiff repeatedly acknowledges that it was the end users who engaged in the illegal acts. <br> Page 9:  Factual Background Section (V)(B) <br> ¶57-61: Plaintiff confirming & acknowledging that defendants' subscribers are Virtual Private Network service providers <br> ¶ That customers of defendants' subscribers (end-users) use BitTorrent to infringe on Plaintiff's exclusive rights of reproduction |

Page 12:  End Users

¶74:  End users accessed copyrighted work from IP addresses provided by Micfo (the complaints fail to state that Micfo rendered services to subscribers – and had no direct relationship with the end users. Micfo provided services to subscribers & not end users.  Thus, Micfo is twice removed from the alleged violations.)

Page 13:  End Users upload and download works through BitTorrent

¶77-81:  Plaintiff repeatedly acknowledges that it was in fact the end-user (customers of defendants' subscribers) who engaged in alleged act

Page 15:

¶93-95:  Plaintiff references Privax (DBA HideMyAss) as a VPN provider who promotes P2P streaming.  However, at no point were the subject IP addresses references in Paragraph (6) leased to HideMyAss/HMA)

Page 16:

Section E falsely states that defendants had knowledge that their subscribers were infringing plaintiff's work.  It's analogous to saying manufacturer of shotguns should be held responsible for the action of a murderer who uses a shotgun to shoot his victim.  VPN services afford security and protection against hackers & data breaches.  Neither Golestan nor Micfo have any active knowledge of what its subscribers, and by extension the end users, do with services provided by Micfo.

Page 17-18:

¶96-109:  Plaintiff states that they emailed thousands of Notices of Infringement to Micfo – and that Micfo failed to respond.  This may or may not be true.  After its indictment Micfo lost the vast majority of its employees (from fifty employees to three) which included those responsible for addressing & monitoring notices which were sent to abuse@Micfo.com.

Page 20:

¶120:  As correctly shown in the screen shot, Micfo's Always-On Monitoring way limited to network uptime to ensure customers' services

are uninterrupted.  It would be illegal for Micfo or other providers to snoop into their customers' servers & activities.

¶120: Continued: responding to terms of service violations is a reactive measure not a proactive one. Internet Service Providers are notified of such violations after the fact.

Page 21: See Micfo's Servicing Subscriber's Agreement *(Exhibit S)*

5. Hosting Services Restrictions:

5.2 provides that "the client shall not use Micfo's Shared Hosting and/or Reseller Hosting Resources including without limitation Bandwidth, Diskspace and Web Content as:

5.2.1:  an alternative to file and/or data storage

5.2.2:  an audio and/or video streaming website"

5.4 provides that " the client understands and agrees that its use of services shall at all times be in accordance with all applicable laws, rules, regulations and court orders. The Client is solely responsible for any and all content, material & data that it ...maintains, transmits, downloads, views, posts, distributes or makes available....whereby Micfo maintains a policy it will terminate its services to any end user guilty of infringement.

5.8 provides for Liability and Insurance: *(See entire section attached in Exhibit S)*

Page 22:  Safe Harbor Protection

¶121:  The Plaintiff acknowledges the creation of a safe harbor that limits the liability of a service provider for copyright infringement.  17 U.S.C. §512(a)

¶122-124:  Micfo had policy of removing violators as established by its terms and conditions.  As acknowledged by plaintiff, it is the customers of Micfo's subscribers (end-users) that engaged in copyright violation, Micfo's subscribers.  Micfo (or any ISP) does not have a window into their customers' systems & servers (privacy violation). Micfo could not access its subscribers' servers as it would constitute security and privacy breach.

Page 23:

| | |
|---|---|
| | ¶127:   At no point were plaintiff's work/protected properties stored on Micfo's servers.  As plaintiff acknowledged the works were stored on end-users' personal computers & that the infringement took place using Peer-2-Peer (P2P) protocol such as BitTorrent.<br><br>Sample   Complaint:   Sent   to   unmonitored   address abuse@Micfo.com on February 16, 2020 (Post-indictment). |
| July 13, 2021 | Notice of Dismissal of Defendant Amir Golestan without prejudice. **(Exhibit G)** |
| July 21, 2021 | Micfo's counsel Jamie Hood, urges Trustee Christine Brimm to defend the allegations against Micfo as any judgment will diminish the most valuable asset of the debtor Golestan. Brimm responds that the Trustee will not hire counsel to defend its interest in Micfo. **(Exhibit H)** |
| July 22, 2021 – January 6, 2022 | Trail of email correspondence between Amir's counsel, Jamie Hood & bankruptcy Trustee Christin Brimm; Hood points out that the Trustee owns 100 per cent of Micfo per the operating agreement. |
| September 3, 2021 | Filed Scheduling Order [ECF 23]. **(Exhibit I)**<br>4. UNDISPUTED FACTS<br>  - Through the severs leased by Micfo, Micfo provided "bare metal servers" and "cloud history" for its subscribers<br>  - Golestan is the registered agent for Micfo, and was formerly the sole member of Micfo (Page 4)<br>  - Micfo's subscribers include Virtual Private Networking (VPN) service providers. (Page 5)<br>  - Micfo ultimately ends accounts that either do not pay for the services and/or violate its terms and conditions.<br>  - Micfo leases use of its servers to its subscribers so that its subscribers can host VPN networks on Micfo's servers, but the subscribers use of the server is not limited to VPN Networks, and Micfo cannot monitor the activity of the subscribers. Page 5;<br>  - The parties agree there is likelihood of a prompt settlement Page 7. |

| | |
|---|---|
| September 7, 2021 | Draft Stipulated Consent Judgment wherein Golestan agrees to assign his legal claims against the third-party violators to the plaintiffs. ***(Exhibit J)*** |
| September 10, 2021 | Attorney Jamie Hood files Micfo's Rule 26 initial disclosures. In response to paragraph 3 B the defendant refers plaintiff to the terms & conditions on Micfo's website which were agreed to by the subscriber. It places all liability for any violation of the terms and condition on the subscriber and not the defendant. ***(Exhibit K)*** |
| September 14, 2021 | Golestan's email to counsel identifies the two subscribers who had customers which were the alleged violators. These violators were customers of Micfo subscribers not of Micfo. Thus, they were customers of Micfo's customers. ***(Exhibit L)*** |
| December 29, 2021 | Golestan resigns as manager of Micfo and so notifies Trustee. ***(Exhibit M)*** |
| January 4, 2022 | Trustee refuses to defend Micfo. ***(Exhibit N)*** |
| January 19, 2022 | Counsel for Trustee, Christine Brimm, by letter to Judge Jackson, informs the court that upon Golestan's bankruptcy filing 100 percent of Golestan's interest in Micfo became the property of the bankrupt estate. Accordingly, the Trustee holds all the beneficial interest in Micfo. Further, she informs the Court that Golestan was the manager of Micfo until December 29, 2021 at which time he tendered his resignation. ***(Exhibit Q)*** |
| January 20, 2022 | Golestan responds to Judge's order to show cause of December 6, 2021. ***(Exhibit R)*** |

## <u>ANALYSIS</u>

### I.  Relevant Conduct Objection

The RPSR attempts to hold Mr. Golestan responsible for uncharged criminal activity. Specifically, it seeks to hold Mr. Golestan and Micfo accountable for downstream customers (customers of customers) who allegedly pirated protected works or engaged in other alleged illegal activity.  However, section 230 shields Micfo from such liability.

18

Section 230 "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997).  Although section 230 excepts federal criminal liability, neither Micfo nor Mr. Golestan have been charged with a federal offense in connection with Micfo's customers' conduct.

Micfo provided a legitimate service to virtual private network ("VPN") clients, and the Government has never asserted otherwise.  The fraud Mr. Golestan pled guilty to was limited to *obtaining* IP addresses from ARIN to lease to clients.  Indeed, the charges in this case do *not* allege that Mr. Golestan or Micfo were aware of illegal activity transmitted by its clients' virtual private networks ("VPN") through Micfo's servers—nor that they were otherwise part of such a scheme. The Government, therefore, has failed to establish that Section 230's shield should be withdrawn, and Micfo/Mr. Golestan held responsible for its customers (or its customers' users) improper use of the service.

Furthermore, this separate uncharged criminal scheme is not part of the "same course of conduct or common scheme or plan" as the offense of conviction. *See* USSG. § 1B1.3.  Therefore, the allegations are not relevant conduct for computing the guidelines for Mr. Golestan's federal wire fraud conviction.

The sudden 18-level victim enhancement in the RPSR arises from a civil suit that Mr. Golestan was initially named in but later dismissed from.  The civil suit alleges that Micfo is liable for the actions of its subscribers, who allegedly reproduced and distributed via BitTorrent or other peer-to-peer networks protected works.  However, as established in the Colorado lawsuit, it is the customers of Micfo's subscribers (end-users) that engaged in copyright violations.  Micfo (or any ISP) does not have a window into their customers' systems & servers.  Micfo leases use of its servers to its subscribers so that its subscribers can host VPN networks on Micfo's servers, but the subscribers' use of the server is not limited to VPN Networks.  Micfo, therefore, cannot monitor

the activity of the subscribers; nor was it obligated to do so. Accessing it subscribers' servers would constitute a security and privacy breach. Additionally, at *no point* were the protected work properties stored on Micfo's servers. As the plaintiff acknowledged, the works were stored on end-users' personal computers & that the infringement took place using Peer-2-Peer (P2P) protocol such as BitTorrent. Finally, Micfo ultimately ends accounts that either do not pay for the services and/or violate its terms and conditions.

More importantly, Mr. Golestan was dismissed from the Colorado lawsuit. Yet the RPSR attempts to penalize Mr. Golestan criminally for the unrelated civil conduct alleged against Micfo, stating: "Micfo/Golestan's practice of creating fictious companies to obtain more IP addresses from ARIN hindered the victims' efforts to prevent piracy of their Works. Particularly because Micfo/Golestan had many alter egos controlling IP addresses . . . the victims could not ascertain that the single company Micfo was responsible for all the IP addresses where their movies were pirated . . . ." (RPSR ¶ 35). But this is yet another attempt to hold Mr. Golestan responsible for end-users illegal use of the service Micfo provided, conduct that he is **twice** removed from. It's also merely an allegation that has not been proved in a court of law, and most importantly, dismissed as against Mr. Golestan.

The PSR operates under an unproved assumption that Micfo and/or Mr. Golestan should be financially responsible for every alleged instance of infringement at a rate of $6.99 per hit, based on unsubstantiated and incomplete information from the Colorado plaintiffs as well as non-plaintiffs that have provided information to the Government. (RPSR ¶¶ 36, 37). However, like the civil allegations against Mr. Golestan, these damages have not been proven in a court of law.

Under Section 2B1.1 of the Sentencing Guidelines, a defendant can be held responsible for actual loss or intended loss from the Defendant's crimes and relevant conduct. However, Mr. Golestan was not responsible for the purported loss here nor is it relevant conduct. However, any actual loss to the alleged victims was caused by customers of Micfo's subscribers allegedly

downloading, reproducing, or distributing via BitTorrent or other peer-to-peer networks the protected work—conduct Micfo is twice removed from.

Unfortunately, piracy is a common improper use of the internet, which is why some actors hire "data service provider to monitor the internet for piracy of their words, and to generate notices of infringement to be sent by their agents to service providers who are assigned Internet Protocol ('IP') addresses where piracy was confirmed." (RPSR ¶ 33). Even the RSPR admits that proper notice to a service provider of a "hit" of infringement does not mean that the user's illegal conduct will stop. (*Id.*) Nor is the process immediate, with notices being sent to providers every 24–48 hours with thousands of copies of a work being shared in the meantime. (*Id.* ¶ 34). At most, it appears a successful notice to a service provider will result in "appropriate steps . . . being taken to stop ongoing piracy by, for example, monitoring whether certain IP addresses increases despite the notices." (*Id.* ¶ 33). This is a far cry from holding Mr. Golestan or Micfo accountable for each and every alleged hit that came across its servers— a purported $7,795,415.76 worth. These hits have never been substantiated.

Furthermore, there are significant questions as to the accuracy of the purported loss amount. These questions are appropriately resolved in a civil suit but are inappropriate here.

As correctly reflected in the original PSR, Mr. Golestan's offense in this case was a victimless one, and Mr. Golestan's sentencing guideline range should be 15–21 months.

[signature page to follow]

21

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ E. BART DANIEL
    E. Bart Daniel
    Federal Bar No. 403
    E-Mail: bart.daniel@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-4123

    *Counsel for Defendants Amir Golestan and Micfo, LLC*

Charleston, South Carolina

January 17, 2023