IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AMIR GOLESTAN | Crim. No. 2:19-CR-00441-RMG |

    Defendant Amir Golestan[1] has asked this Court to continue his sentencing, which is scheduled for May 2, 2023, based on a case currently pending in the Supreme Court of the United States, *United States v. Ciminelli*, 142 S. Ct. 2901 (2022) (No. 21-1170). Defendant asserts that his conduct "may no longer, after *Ciminelli*, meet the statutory definition of fraud" due to the alleged similarities between the two cases' theories of wire fraud liability. Def's Mot. at 5. As will be discussed in more detail below, the issue before the Supreme Court in *Ciminelli* has no bearing on Defendant's guilty plea. The wire fraud conviction in *Ciminelli* was pursuant to a specific theory of wire fraud recognized by the Second Circuit – the right-to-control theory. In the case pending before this Court, Defendant pled guilty to traditional wire fraud and its elements as set forth in 18 U.S.C. § 1343. Dkt. No. 104 at 14, 21–22. As a result, the *Ciminelli* decision will have no effect on Defendant's guilty plea, and the Government opposes Defendant's motion for a continuance.

---

[1] This Court is scheduled to sentence both Defendant Amir Golestan and Defendant Micfo, LLC on May 2, 2023. However, only Defendant Golestan filed a motion to continue.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 16, 2021, Defendants Amir Golestan ("Defendant" and/or "Golestan") and Micfo, LLC ("Micfo") (collectively, Defendants) pled guilty to 20 counts of wire fraud after 1.5 days of trial. Dkt. No. 104. During the Defendant's change-of-plea hearing, this Court explained to Defendant the charges that he was pleading guilty to, which were 20 counts of wire fraud pursuant to 18 U.S.C. § 1343. Dkt. No. 104 at 14. In explaining these charges to Defendant, the Court read the following elements of wire fraud: "devis[ing] or intend[ing] to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to transmit by means of wire, radio, or television communication in interstate and foreign commerce." *Id.* After explaining the elements to Defendant, the Court reviewed each of the elements and applied them to the factual circumstances pertinent to Defendant's case, to which Defendant acknowledged and agreed. Dkt. No. 104 at 14–17.

Prior to trial, Defendants filed a motion to dismiss in September 2019. Dkt. No. 46. In their motion, Defendants argued, first, that the Indictment failed to allege a scheme to defraud, and, second, that the Indictment failed to allege "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *See generally id.*; Dkt. No. 75 at 2. In July 2021, this Court denied Defendants' motion. Dkt. No. 75. In this Court's order denying Defendants' motion, it held that IP addresses are "property" as contemplated by the wire fraud statute. Dkt. No. 75 at 3–4. Moreover, this Court found that the Indictment sufficiently set forth a "scheme and artifice to defraud" because the Indictment charged Defendants with fraudulently obtaining the rights to IP addresses, which deprived ARIN of "something of value." *Id.*

# ANALYSIS

I.  **THE FACTUAL AND PROCEDURAL BACKGROUND OF *UNITED STATES v. CIMINELLI* MAKES CLEAR THAT IT IS INAPPLICABLE TO THE DEFENDANT'S CASE.**

   A.  **Background and Indictment.**

The defendants in *Ciminelli* included Alain Kaloyeros, Joseph Gerardi, Steven Aiello, and Louis Ciminelli who schemed to rig the bidding process for New York State-funded projects. *United States v. Percoco*, 13 F.4th 158, 163–64 (2d Cir. 2021), *cert. granted sub nom. Ciminelli v. United States*, 142 S. Ct. 2901 (2022). The projects were funded by a billion-dollar initiative to invest in the Buffalo, New York area. *Id.* at 164. Fort Schuyler Management Corporation was the non-profit in charge of vetting and selecting the companies to receive the various contracts under this initiative. *Id.* at 165.

Kaloyeros was a member of the Fort Schuyler Management Corporation's Board of Directors. *Id.* There were two specific requests for proposal (RFPs) at issue that were charged in the superseding indictment: the Syracuse RFP and the Buffalo RFP. *Id.* at 166. It was charged that the various defendants worked together during the bidding process to steer the Fort Schuyler Board to choosing Ciminelli's company for the Buffalo Request for Proposal and Gerardi and Aiello's company for the Syracuse Request for Proposal. *See id.* at 166–67. This was done by tailoring the specific requirements in the requests for proposal to factors that were specific to each company. *Id.*

On September 19, 2017, in a superseding indictment, a federal grand jury charged Kaloyeros, Gerardi, Aiello, Ciminelli, and others with various federal crimes. *Id.* at 168. Counts Two and Four of the superseding indictment are the substantive wire fraud offenses that charge

the right-to-control theory of wire fraud pursuant to 18 U.S.C. § 1343. *Id.* The counts specifically charge that the defendants, through their scheme, withheld information from the Fort Schuyler board. *See id.* at 171, 177.

### B.     Right-to-Control Theory of Wire Fraud and Trial.

The Second Circuit Court of Appeals has "endorsed a 'right-to-control theory' of wire fraud that allows for conviction on 'a showing that the defendant, through the withholding or inaccurate reporting of information that could impact on economic decisions, deprived some person or entity of potentially valuable economic information.'" *Percoco*, 13 F.4th at 170 (quoting *United States v. Lebedev*, 932 F.3d 40, 48 (2d Cir. 2019)). The right-to-control theory is based on the premise that a "defining feature of most property is the right to control the asset in question." *Lebedev*, 932 F.3d at 48. The right-to-control theory requires proof that "misrepresentations or non-disclosures can or do result in tangible economic harm." *Percoco*, 13 F.4th at 170 (quoting *United States v. Finazzo*, 850 F.3d 94, 111 (2d Cir. 2017)).[2]

Trial began on June 11, 2018. *Id.* at 168. On July 12, 2018, a jury returned a guilty verdict on all counts, including the substantive wire fraud counts that were charged under the right-to-control theory. *Id.* at 169.

### C.     Second Circuit Appeal.

One of the issues on appeal, which is the issue for which the Supreme Court granted certiorari, involved the jury instructions regarding the right-to-control theory of wire fraud. *Id.* at 174–76. On appeal, the appellants argued that the instructions "were inadequate because they

---

[2] As a response to Defendant's motion, the Government is merely highlighting the basic elements specific to the Second Circuit's right-to-control theory to contextualize why Defendant's motion to continue lacks merit.

failed to explain that receiving the full benefit of a bargain is not wire fraud and they purportedly allowed for convictions based on a merely hypothetical possibility of harm." *Id.* at 175 (cleaned up).

As explained in the Second Circuit opinion, "[t]he jury charge began in relevant part by defining property to include '***intangible interests such as the right to control the use of one's assets*** . . . .'" *Id.* (emphasis added). The jury instructions further explained that the "right to control is injured when the victim 'is deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets.'" *Id.* The Second Circuit explained that the district court went on to define what "potentially valuable economic information" was and what "tangible economic harm" meant. *Id.*

The Second Circuit then explained why it found the appellant's arguments without merit and held that "there was no error, and certainly no harmful error, in the district court's ***right-to-control*** jury instruction." *Id.* at 176 (emphasis added).

D.     **Supreme Court.**

The question before the Supreme Court in *Ciminelli* is whether the Second Circuit's "right-to-control" theory of fraud—which treats the deprivation of complete and accurate information bearing on a person's economic decision as a species of property fraud—states a valid basis for liability under the federal wire fraud statute, 18 U.S.C. § 1343. Petition for Writ of Certiorari, *United States v. Ciminelli*, 142 S. Ct. 2901 (2022) (No. 21-1170).[3]

---

[3] The Government notes that during oral argument in November 2022 more than one justice made clear that the question presented was whether the right-to-control theory is a viable theory of wire fraud liability. For example, see the oral argument at approximately 34 minutes and 37 minutes. The link to oral argument audio can be found at the following internet address: https://www.supremecourt.gov/oral_arguments/audio/2022/21-1170.

**II.    THE PENDING SUPREME COURT CASE IN *UNITED STATES V. CIMINELLI* IS NOT RELEVANT TO THIS MATTER BECAUSE DEFENDANT WAS CHARGED, AND PLED, TO THE TRADITIONAL WIRE FRAUD ELEMENTS – NOT THE ELEMENTS ON THE RIGHT-TO-CONTROL THEORY AT ISSUE IN *CIMINELLI*.**

As set forth above, the question presented to the United States Supreme Court pertains to the right-to-control theory of wire fraud and whether it is a valid basis for liability under 18 U.S.C. § 1343. As explained above, the jury in *Ciminelli* was charged on the specific elements of wire fraud in the right-to-control context.[4]

In the present case, Defendants were not charged under the right-to-control theory. In fact, the Fourth Circuit has not recognized this theory, nor do Defendants supply any authority or basis for asserting that this theory applies here. As this Court has of course observed, Defendants were charged with substantive wire fraud based on their scheme to obtain ***rights to IP addresses*** (i.e., property) from ARIN based on fraudulent representations of material fact. *See* Dkt. No. 75. In fact, prior to trial, Defendants attempted to have this Court dismiss the Indictment by arguing that

---

[4] In his motion Defendant states, while referencing the link to the Supreme Court oral argument, that "[t]he broader question the Court could address in an opinion would be the appropriate limits to the federal wire fraud statute." Def's Mot. at 3. The Government would set forth that it agrees with the Defendant that the Supreme Court will most certainly address the limits of the ***right-to-control*** theory of wire fraud, which was the question presented to the Court. This theory has no bearing on Defendant's case, which is based on traditional wire fraud and not on the right-to-control at issue in *Ciminelli*. It is also worth noting that in briefing before the Supreme Court, and at oral argument, the Government suggested that the facts presented could lead to a conviction under a fraudulent inducement of a transaction theory. Even if the Supreme Court chooses to address the Government's suggested alternate theory and limits the application of the federal wire fraud statute as it relates to the Government's alternate theory, it will have no bearing on Defendant's case, which, again, focused solely on traditional wire fraud. As stated throughout this response, Defendant pled guilty to 20 counts of wire fraud based on a scheme to defraud ARIN out of rights to property – that is IP addresses. This Court has recognized that the rights to IP addresses are a property interest. There is no suggestion in the record of *Ciminelli* that the Supreme Court's holding will have any bearing on traditional wire fraud charges – i.e. – deprivation of property.

6

IP addresses were not property and that the Government had not sufficiently charged a scheme to defraud. Dkt. No. 46. This Court expressly rejected Defendants' arguments in its order denying Defendants' motion to dismiss. ECF No. 75.

Put simply, in his motion to continue, Defendant is attempting to fit the facts that gave rise to his criminal charges into a narrow theory of wire fraud recognized by the Second Circuit but not by the Fourth Circuit. Defendant states that "[l]ike in *Ciminelli,* the government's theory at trial in Golestan did not depend on actual monetary loss, but the idea of informational deprivation in obtaining a thing." Def's Mot. at 4–5. Defendant's attempt to pigeon-hole the facts into the right-to-control theory, which the Government has never argued or charged, lacks merit because the Government charged Defendants with obtaining the rights to *property*, that is IP addresses, by means of materially false representations. *See* Dkt. No. 75 at 3–4. It was not necessary that the Government prove an actual monetary loss to sustain a conviction at trial, as this Court held.[5] Dkt. No. 75 at 3 ("The statute requires the indictment to state that Defendants devised a scheme 'for obtaining money or property'—not that Defendants actually did obtain money or property."); *see also United States v. Gray*, 405 F.3d 227, 234 (4th Cir. 2005) ("The Government need not prove that the victim suffered a monetary loss as a result of the alleged fraud; it is sufficient that the victim was deprived of some right over its property" (citing *Carpenter v. United States*, 484 U.S. 19, 26-27 (1987))). Instead, the Government was required to prove a scheme to deprive another of money or property; here, the property was the rights to certain IP addresses that Defendants fraudulently obtained. Contrary to Defendants' newfound claim that "informational deprivation"

---

[5] The Government notes for this Court that the amount of loss suffered by the victims of Defendants' offenses of conviction is pertinent to determining the appropriate enhancement under the United States Sentencing Commission Guidelines § 2B1.1 and is the basis of objections pending in the Presentence Investigation Report. The amount of loss is not pertinent to the analysis of whether the statutory elements of wire fraud have been satisfied.

7

is at issue here, *see* Def's Mot. At 4–5, the issue is, and has always been, the deprivation of property in the form of rights to certain IP addresses, as this Court itself has found, *see* Dkt. No. 75 at 3–4.

In Defendant's guilty plea, this Court read Defendant the elements of wire fraud, not the elements of the right-to-control theory of wire fraud. *See* Dkt. No. 104. Here, Defendants were charged in a circuit that does not recognize the right-to-control theory, nor do Defendants support their application of this theory with any authority. As a result, the Supreme Court's opinion will have no bearing on Defendant's case, and this Court should deny Defendant's motion to continue.

## CONCLUSION

This Court has already held that the rights to IP addresses constitute property within the statutory definition of wire fraud. Contrary to Defendant's claim of "informational deprivation" under the right-to-control theory of liability, here the issue is a simple and traditional case of wire fraud involving fraudulent representations to deprive another of property. The Government respectfully requests this Court to deny Defendant's motion to continue and proceed with sentencing as scheduled.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY
By: *s/ Amy Bower*
Amy F. Bower (ID#11784)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
843-727-4381
Amy.Bower@usdoj.gov

April 25, 2023
Charleston, South Carolina